In re Bruce Dean LLOYD Jane Keplinger Lloyd and Bruce Dean Lloyd d/b/a Direct Mobile Home & Factory Housing, Debtors.

FIRST TENNESSEE BANK OF JOHNSON CITY, TENNESSEE, Plaintiff,

v.

Bruce Dean LLOYD d/b/a Direct Mobile Home & Factory Housing, Defendant.

Bankruptcy No. 3–83–01523.

Adv. No. 3–83–0941.

United States Bankruptcy Court, E.D. Tennessee.

May 10, 1984.

Guy S. Weems, Jr., Jonesborough, Tenn., for plaintiff.

Robert B. Carter, Johnson City, Tenn., for defendant.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

Plaintiff, First Tennessee Bank of Johnson City, Tennessee, seeks judgment against the debtor, Bruce Dean Lloyd, a former used mobile home dealer, in the amount of $9,822.66 and a finding of nondischargeability. 11 U.S.C.A. § 523(a)(6).[1]

### I

On the date of bankruptcy the bank held four unpaid notes executed by the debtor. The first of these notes is dated February 16, 1980, in the original amount of $4,473.16, secured by a 1971 Citadel Mobile Home. The title to the mobile home was in a third party but the debtor held an "open title," being engaged in the business of selling mobile homes. The debtor testified that he sold the mobile home and received approximately $2,500.00 from the sale. Subsequent to the sale the debtor paid $2,500.00 to the First Tennessee Bank by way of money orders dated May 23, 1983, and May ___, 1983.

1.    (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

    .    .    .    .    .

   (6) for willful and malicious injury by the debtor to another entity or to the property of another entity; ....
11 U.S.C.A. § 523(a)(6).

Although plaintiff initially asserted nondischargeability under Section 523(a)(2) (obtaining money or property by false representations, false pretenses, or actual fraud) plaintiff now relies upon Section 523(a)(6), willful and malicious conversion. See plaintiff's Proposed Findings of Fact and Conclusions of Law, February 28, 1984.

The Bank holds a note dated November 24, 1980, in the amount of $2,500.00 secured by a 1977 Mercury automobile. A security agreement and financing statement were recorded in the amount of $2,005.73. No testimony was introduced as to the difference in the amount of the note and the security agreement and financing statement. The debtor sold the automobile for approximately $2,000.00 but did not pay the obligation held by the Bank.

The bank holds a note dated November 21, 1980, in the amount of $3,506.00, which note supposedly was secured by a 1971 Flamingo mobile home. The title showed a Henry Allen Bowen as the owner of the mobile home, but the title was not endorsed by Mr. Bowen. There was attached, however, a blank power of attorney executed by him. The debtor testified that he never had possession of the mobile home but that he had agreed to purchase it from a bank in another state. When he was unable to consummate the purchase, he filed suit against the party in possession but never recovered the mobile home. He did receive approximately $2,200.00 from the party in possession. None of the monies received were paid over to the plaintiff Bank.

The Bank also holds a note dated July 10, 1981, secured by a 1975 Datsun. The debtor testified that he picked up the title to the vehicle when he sold it for approximately $800.00 after the vehicle had been damaged in an accident. The monies were not paid over to the bank.

The plaintiff introduced a printout showing a series of loans made to the defendant, interest charged, payments made, and balances owing. The printout does not identify the security but only the continuing advancements of monies and payments of the same. Ex. 7.

The debtor testified that he had done business with the Bank since 1971, that during that time he had financed many vehicles and mobile homes with the Bank, and, as sales were made, he generally paid the monies to the Bank. He testified that the four notes referred to herein are no different than any of the other notes negotiated over the many years of doing business, only that when he was finally forced to file bankruptcy, he had not received adequate monies from the sales to pay off these particular notes. He testified that he had other lines of credit and that at least one of his creditors, General Electric Credit Corporation, had repossessed the mobile homes on which they held liens.

No testimony was introduced establishing a formal trust arrangement nor any positive fraud on the part of the defendant.

## CONCLUSIONS OF LAW

■ 11 U.S.C.A. § 523(a)(6) provides that a debtor may not receive a discharge from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."

"In order to fall within the exception of Section 523(a)(6), the injury to an entity or property must have been willful and malicious.... The word 'willful' means 'deliberate or intentional,' a deliberate and intentional act which necessarily leads to injury." Vol. 3, Collier on Bankruptcy, 15th ed., Section 523.16.

Plaintiff's proof in the instant case does not meet this test. See Bankruptcy Rule 4005, Burden of Proof in Objecting to Discharge. The course of dealing between the parties over a period of some twelve years indicates the Bank had countenanced a course of conduct that permitted the debtor to sell vehicles without forthwith applying the proceeds to the Bank's notes. It will be noted that the notes held by the Bank in 1983, when the debtor declared bankruptcy, are dated in 1980 or 1981. Surely the Bank knew that these vehicles were not on the debtor's lot for some 2 or 3 years.

■ Exceptions to the dischargeability of a debt are construed strictly against the creditor and liberally in favor of the debtor. *Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915). This principle is in accord with one of the basic underlying policies of the Bankruptcy Code of providing the debtor with a fresh start. H.R. Rep. No. 595, 95th Cong., 1st Sess. 125,

*reprinted in* 1978 U.S.Code Cong. & Ad. News pp. 5787, 5963, 6086.

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 7052.